No. 3967.—MARIE MATHILDE, COUNTESS DE BETHUNE, *v.* LEVY & SCHEUER.

If two witnesses testify to a verbal contract of lease, one being a party to the lease and the other not being a party, and has no interest in the lease, and their testimony is conflicting, in such case the weight of the evidence will be given in favor of the witness who has no interest in the result of the suit.

APPEAL from the Fourth District Court, parish of Orleans. *Leaumont, J. T. Gilmore & Son,* for plaintiff and appellant. *Cotton & Levy,* for defendants and appellees.

TALIAFERRO, J. The plaintiff sues on a contract of lease. She alleges that by her agent she leased, in the year 1871, to the defendants for the term of one year, to commence on the first of October, 1871, the house or premises No. 1, southwest corner of Canal and Magazine streets, in New Orleans, for the sum of three hundred and fifty dollars per month. The plaintiff sues for five months rent, or $1750, due at the time of filing her supplemental petition. The defendants deny that they entered into the contract declared upon by the plaintiff. They had judgment in the lower court, and the plaintiff has appealed. In deciding this case, we have to determine from the evidence whether there was a valid binding contract between the parties verbally made by them, notwithstanding the defendants failed or refused to sign a written instrument of lease and to execute notes for the payment of the rent monthly as they agreed to do. Downing, a witness whose testimony was taken under commission, says : " All that I know about the lease of said store is, that Mr. Ernest, the agent of the plaintiff, told me that he had rented the store from the expiration of my lease to Levy & Scheuer, and that on my calling on them, as I have already stated, to see them about my fixtures, they admitted to me that they had rented the store from Mr. Ernest. I think they said their lease was for the period of a year, but I am not positive about that." This witness had been the tenant of the leased premises the previous year, and wanted to sell to Levy & Scheuer his fixtures, which they declined to purchase. In relation to these fixtures the witness, in answer to one of the interrogatories, said : " Subsequently, on being informed by them (Levy & Scheuer) that they were trying to sublet the store, I requested them in case they should succeed in doing so, to try to sell my fixtures for me to the next tenant, which they promised to do." Ernest, the agent of the plaintiff, said in his testimony : " I closed the lease with them on the eighth of July at the rate of $350, per month from the first of October, 1871, to first of October, 1872. In answer to a cross interrogatory, he said the lease was to be in writing, and notes to be given ; that on separating with Mr. Scheuer on the morning of the eighth of July, I told him that the notes and lease would be sent to him some time for his signature. He said to send

them to him and he would sign them ; we parted in that way." Frede-rick Ernest, nephew of the plaintiff's agent, testified "that about three days before the lease was closed Scheuer, I think, of the firm, came to Ernest, Sr., and asked for the refusal of the two houses until he could see which one he could take. At the same time there were other applicants for it ; the refusal was given to him for three days ; he came back at the expiration of the time and closed the agreement for No. 1, the corner house ; the understanding was that he was to sign the lease and notes and pay the revenue stamp for the lease whenever it was presented to him ; that is about the whole transaction." In reply to the question, " was the bargain concluded ? " the witness answered : " It was undoubtedly concluded in my presence." He stated that in September he presented the lease and notes to be signed and the parties refused to sign them. This witness, under cross-examination, was interrogated as to whether he did not, in September, advertise the store for rent, and his attention was directed to an advertisement to that effect that appeared in the New Orleans Times of the twenty-fourth September, 1871. He answered : " Mr. Scheuer came to me and asked if he could make a compromise to be released from the rent. I told him positively, No ! that no sum would induce me to do it, acting as agent. He then asked me to put a notice in the paper that the house was for rent, at his expense and his risk, and my letter to Mr. Mont-gomery will show that. I did that ; I wrote that it had been done at the risk of Levy & Scheuer." Re-examined by plaintiff's counsel. To the question, please state particularly why you advertised, he answered : " I did it at the request and as a matter of accommodation to the firm of Levy & Scheuer, purely out of courtesy, and nothing else." To the question was there any time stated during which the notes and lease were to be signed, he replied : " No, sir ; he said to send them around any time. I usually make them out the latter end of June for the ensuing year ; the lease commences on the first of October ; the lease and notes are made out and handed to the tenants, and they take their time by the first of October ; they lie very frequently in the hands of the tenants for two months ; I am not importunate about it." Scheuer, one of the defendants, and a bookkeeper of the firm of Levy & Scheuer, are the only witnesses examined on behalf of the defendants. The testimony of the bookkeeper is unimportant. He states that on the twenty-eighth of September a man came into the office and handed him some papers, which he found, upon opening, to be a lease and some promissory notes to be signed ; these he handed to Mr. Scheuer, who refused to sign them, and they were given back to the person who brought them. An hour later Mr. Ernest came in and presented the same papers to Mr. Scheuer, who again refused to sign the lease, saying that he had been released from the lease. On the first of October the

keys of the store were presented at the store and were refused by Mr.
Scheuer. Scheuer denies having asked Ernest if he could be released
by paying a certain amount. He also denies authorizing him to adver-
tise. He said the bargain was not completed, because he might have
objected to some clause in the lease when he was to sign it. Here is a
conflict of evidence in regard to material facts, and the evidence must
be scrutinized closely. It must be borne in mind that Scheuer is his
own witness ; that he is testifying for himself and for his partner. The
two Ernests have no interest in the case. Scheuer has a large interest
in the result. If his testimony is to prevail, his firm would be released
from the payment of a large sum. Much is to be taken into consideration
regarding the manner in which a witness makes his statements.. There
is a marked contrast in this respect between the witness in this case
who testifies in his own favor and those who have no personal interest.
The testimony of the former is manifestly devoid of that distinctness,
fullness and clearness which characterize that of the latter. It is to be
noted, also, that the evidence of three witnesses disinterested is in array
against that of one who *is* *interested*, and we must conclude that it
preponderates against the defendants. Downing, the previous lessee,
heard the declarations of both parties that they had made a contract
of lease. He swears that he was informed by Levy & Scheuer that
they were trying to sublet the store. The statements of the other two
are clear and positive of the completion of the contract verbally. It
is shown, we think, satisfactorily, that it was not the meaning and
intention of the parties that the signing of the notes and the instrument
of lease should be necessary to the completion of their contract. We
can not but consider the evidence as establishing that both parties
believed the verbal contract complete, and that they were bound by it
without signing written acts; that the signature of these acts was not
in any manner a condition precedent to the completion of the contract.
If the defendants did not consider themselves vested with the rights of
lessees, why were they trying to sublet the premises ? This statement
of one of the witnesses that they told him they were trying to make a
sublease, is not denied by Scheuer in his evidence. Why should they
aim to effect a compromise to be released if they did not believe they
were bound ? And why authorize Ernest to advertise the letting of
the premises at their expense and risk, if it were not to avoid the
effects, as far as they could, of their non-compliance with the contract
by getting other tenants for the plaintiff? An effort was made by the
introduction of the advertisement in the Times newspaper of the
premises for lease to show that the plaintiff's agent considered the
agreement with Levy & Scheuer as of no effect. But we think there
was a failure in the effort. The clear and direct statement of the
witness, reiterated as it was, that the advertisement was made at the

special request of one of the defendants, and through courtesy to them, must be taken as carrying greater weight than the less consistent statements of the witness having an interest in procuring a different interpretation of the cause of the advertisement. We think, upon the whole, the judgment of the lower court is erroneous. It is therefore ordered, adjudged and decreed that the judgment of the District Court be annulled, avoided and reversed. It is further ordered that the plaintiff recover from the defendants the sum of seventeen hundred and fifty dollars, with legal interest on each of the five installments thereof of three hundred and fifty dollars each from the falling due respectively of each installment. It is further ordered that defendants pay costs in both courts.

Rehearing refused.