McINNIS, Judge.
This is a suit alleging damage in the sum of $1150, less a credit due in the sum of $300. The claim is itemized as follows.:
Damage to plumbing $ 100.00
Loss of profit on business, for four weeks 800.00
Loss of use of premises for four weeks 200.00
Rental for storage of equipment left in leased premises 50.00
Total $1150.00
Less credit 300.00
Balance $ 850.00
On September 25, 1950, defendant, the lessee of a store building and basement, known as municipal number 609 Milam Street in the City of Shreveport, Louisiana, executed a sublease to plaintiff of the premises from October 1, 1950 to March 1, 1955, the end of the lease it held on the premises, for a monthly rental of $200. Prior to September 25, 1950, viz.: September 19, 1950, defendant executed a bill of sale to plaintiff for certain property, for a consideration of $750 of which $450 was. paid in cash and a note given for $300 payable in monthly installments of $50 each beginning January 1, 1951. Excepted from the sale of plumbing fixtures, pipes, etc., were six lavatories, which were removed from the premises pri- or to October 1, 1950.
Plaintiff claims that the plumber employed to remove the lavatories broke off the drain pipes in such manner as to cost him $100 extra to install the lavatories and that four weeks of the delay in opening for business was caused by the plumber breaking off pipes, and claims also $200 for one month rent.
Defendant left some property consisting of a desk and five fans, a barber chair and a neon sign in the leased premises. Plaintiff bought three of the fans and one of them burned out, and the other is in the leased premises. For storing and caring for these articles he asks $50.
Defendant answering denied the substantial 'allegations of the petition, and further answering alleges that plaintiff took possession of the leased premises about September 25, 1950, and that no complaint was made until a short time before suit was filed, which was March 29, 1952.
*455 After trial on the merits judgment was rendered and signed rejecting the remands of plaintiff, and he prosecutes this appeal.
Schroeter Plumbing Co., performed the work of installing the plumbing for plaintiff. Mr. W. F. Schroeter testified that in talcing down the lavatories the plumbers employed by defendant broke the drain pipes off back of the walls and that this made extra expense of $80 for doing the plumbing.
Mr. T. C. Messina, connected with Standard Plumbing and Heating Co., made an estimate on the plumbing job but he did not fix any figure for extra cost. He said the lavatories had not been properly removed, or at least the pipes had been broken off or torn off.
Mr. O. L. Cooley, a plumber, speaking of the lead pipes, said they had been sawed off flush with t-he wall, some twisted. He made no estimate of extra cost.
Plaintiff testified that the drain pipes had been torn or broken off at the wall.
L. L. Stephenson and Bob Stephenson, employees of the firm of McLemore-Ste-phenson Co., testified that they are the persons that actually removed the fixtures and that the hot and cold water pipes, connected to the fixtures were disconnected by unscrewing them from the fixtures, and the ends of the pipe left in the building were capped, and that the lead drain pipes were sawed off at the false wall and were closed by pinching and soldering to prevent escape of sewer gas into the building. The false wall is set up inside the permanent wall to hide pipe that would otherwise be exposed. Mrs. Marguerite Metcalf, president of defendant corporation, and Nell McKinney, an employee, testified to seeing the pipes after the plumbers had disconnected the fixtures, and that they had not been broken and torn off as claimed by plaintiff.
The false wall referred to is a wall set up some two feet from the wall of the building to conceal the pipes running along the inside of the walls of the building. The back of the lavatories is only an inch or two from the false walls, and the lead pipes used for drain pipes were cut off flush with the false wall.
Plaintiff experienced some delay in getting new lavatories to set up in place of those removed. He claims however that except for the manner in which the old ones had been removed he could have put up temporary fixtures to use while he waited for the new ones he had ordered. He also claims that the pipes and valves and connections removed should have been left, but it appears that thes.e were actually part of the lavatories. They were the drainage part of the fixtures.
Plaintiff says he tried to work out some agreement with defendant and offered some concessions but that defendant would not concede anything. He was asked:
“Q. For what reason did you make an offer of the item of credits? A. Well for more than one reason. First of all, I had not paid Mrs. Metcalf all of the $750.00. ' I owed her a note. Second I didn’t want court suits and s.o on, because I did not feel that I was financially able to go into it and argue with her about it, and I felt it would wreck all hopes of stalling off her approaching me on the matter of the note.”
There is a stipulation in the record agreeing that if the court finds for plaintiff the profit claimed shall be fixed at $100 a week, which would amount to $400.
If allowed loss of profit he would not also be allowed $200 claimed for one month rent. The demand for $50 storage of items left in the building is not made out. If allowed $80 for extra plumbing and $400 for loss of profit the total would be $480, less the credit of $300 plaintiff says is due -for the note.
In written reasons for judgment the lower court says:
“We have no reason whatsoever to disbelieve the testimony of Mr. Schroe-ter, Mr. Messina, Mr. L. L. Stephenson or Mr. Bob Stephenson, but their testimony can not be reconciled. We can only hold that the plaintiff has failed to prove his cas.e by a preponderance of the evidence.”
 We agree that plaintiff has failed to make out his case by a preponderance of the evidence. We believe the record as a *456 whole supports the conclusion that most if not all of plaintiff’s claims are the result of his inability to get the new fixtures he ordered, and to get a plumber to do the work. It appears that he did not get the fixtures until about the first of December and the weather was cold, and plumbers were busy fixing water pipes that had frozen and burst.
In brief plaintiff says that the Stephen-sons, who disconnected the fixtures for defendant, had a direct interest in denying that the fixtures had been removed in an unworkmanlike manner, since in that event they would be liable to defendant, which hired them, citing Mathilde v. Levy, 24 La. Ann. 421 and Burke v. Commercial Standard Insurance Co., La.App., 38 So.2d 644. The record in this case does not disclose any interest these witnesses have in the outcome of the lawsuit. The fact that they performed 'the work should raise no presumption that their testimony is untrue.
We are of the opinion that the judgment appealed from is correct, and accordingly it is affirmed at the cost of plaintiff in both courts.